Mr. Justice Shepard
delivered the opinion of the Court:
This is an appeal from a decree of divorce rendered on a bill filed by David M. Ogden against Sarah Jane Ogden. The bill alleges that the parties were married on June 17, 1896, in the District of Columbia, where they then resided and continued to reside until the commencement of the suit.
Two distinct grounds for the divorce prayed were alleged in the bill and testimony was taken upon each.
The first of these is, that the defendant, at the time of her marriage to complainant, had a husband living from whom she had not been legally divorced. The second is cruelty on the part of the defendant endangering the health and life of the complainant.
In support of the first ground the following facts appear substantially in the record. Defendant’s maiden name was Gibson, and she was born in Ireland. She married Henry J. Hanna and came with him to the United States in 1868. After several years’ residence in New York, Hanna joined the United States Army and served at different posts as a hospital steward. He was ordered to Fort Ellis, Montana, in 1877, and lived there with his wife and their three children. She was for a few months mátron of the hospital.
On January 1, 1878, she was retired from that position and shortly afterwards went to a place called Bozeman, leaving her husband- and children, from whom she remained separated. Hanna remained in the military service until discharged at Chattanooga, Tennessee, in 1879; he then went to Helena, Montana,-and lived until 1884, after which he moved to Indiana.
On March 2, 1878, defendant filed a suit for divorce against Henry J. Hanna in the district court for Gallatin County, in the then Territory of Montana, alleging cruelty and abuse as grounds therefor. It was also alleged that she *109 had been a resident of Montana since June 15, 1877. The bill was sworn to by complainant and seems to have been dismissed during the same year without service upon the defendant Hanna.
On December 19, 1878, she filed another suit for divorce against said Hanna, in the circuit court for the city of St. Louis, State of Missouri. The petition therein was sworn to by her and alleges that “she has resided more than one whole year next within this State before the filing of this her petition.” The charges against the defendant are continuous cruelty and ill-treatment during four years at Bozeman in Montana; and adultery during the same period with a party named in the petition.
In the petition for divorce filed in Montana she alleged that there were three children of the marriage, aged respectively nine, six and two years, and asked for a decree giving her the immediate care and custody of the eldest, with that of the second, twelve months thereafter. These were not mentioned in the petition filed in the Missouri court.
The statute of Missouri in force at the time of that suit declared that the plaintiff in an action for divorce shall have resided in the State for a period of one year next before the commencement of the suit. Upon this proof showing that appellant had not resided in the State of Missouri for the required time, the appellee contended, and the court below so held, that the circuit court of the city of St. Louis had no jurisdiction in the premises and its decree was null and void.
Whether it is permissible to inquire into the truth of the allegation in the petition to the Missouri court, to the effect that the plaintiff, at the time of commencing her suit, had been a resident of that State for one year, and, upon the ascertainment of its falsity which is apparent, to declare the decree of that court void for the want of jurisdiction, presents a very important and delicate question. Henry J. Hanna, the defendant in that suit, and against whom the *110 decree ran upon the summons by publication, has since, it would seem from suggestion made on the argument, assumed the validity of that decree, and contracted another marriage. At the same time, there is nothing to show, nor is there ground to suspect, that he had any knowledge of the pendency of the suit, or acquiesced in the perpetration of the fraud upon the Missouri court. It is true that he can not be bound, nor can his status be actually determined, by any decree made in this proceeding, yet, an adjudication that the bonds of marriage between him and the appellant here have not in fact been dissolved might seriously, though indirectly, embarrass him in his new relations, and also injuriously affect the innocent wife and issue of his second marriage. Moreover, the statutes of the State of Missouri necessary to the determination of the question have not been set out in the proof. All that appears is their substance and effect as alleged in the bill and claimed in the briefs of counsel, any inaccuracy in which might lead to a wrong conclusion.
For these reasons, though leaning to the view that the Missouri court was without jurisdiction to render the decree, we have concluded to pretermit the expression of a decided opinion on the question and to rest our conclusion on the second ground of the bill, as that will be sufficient for the final disposition of the case.
The appellee, Dr. Ogden, was a widower and maintained a home for his two unmarried children and his mother. He married appellant shortly after the death of her second husband, John Shea, and brought her to live in the same house. He was not aware of the fact, and it was concealed from him, that appellant’s first husband was alive, and that she had living children by that marriage. He denied in his bill, and it is nowhere made to appear, that he knew she had been married to any one prior to Shea. A marriage begun with this want of confidence, if not to say deception, soon developed discord and unhappiness. It *111 would serve no useful purpose to review the evidence introduced upon this issue of cruelty. Passing by some points about which there is conflict of evidence, we find proof to show that the appellant began soon to show ill temper to her husband, without apparent provocation on his part.
She soon began to charge him with having improper relations with his colored female patients and servants, and went so far as to inquire of one of the servants if he had not made indecent solicitations to her.
He was also made the butt of certain sneers and coarse insinuations of a particularly irritating character, although they involved no suggestion of immorality. Shortly before the institution of the suit she struck him a blow in the face in the course of an altercation.
There is no question of the serious effect of appellant’s conduct upon the health of the appellee. Before marriage he had been in good health and capable of carrying on his practice as a physician. The evidence of competent and reputable physicians shows that during his domestic troubles he suffered loss of appetite and flesh, became extremely nervous, and was afflicted with insomnia. Before separation from the appellant and the institution of his suit he was on the verge of complete nervous exhaustion; and his “run down condition,” so called by the medical witnesses, threatened serious results unless there should be a complete cessation of its cause. His sexual relations with the appellant appear to have ceased upon, if not before, his discovery of the history of her first marriage and divorce, and cohabitation in the formal relations of husband and wife became intolerable. Passing by the single act of personal violence before mentioned, the mental suffering which the appellee endured and which seriously affected his health and threatened his life, is, in our opinion, sufficient foundation for the decree divorcing the parties.
By the great weight of authority, which we deem it *112 unnecessary here to review, cruelty, as a ground of divorce, is not limited to physical violence. Conduct actually causing mental suffering of severity sufficient to seriously affect health and endanger life is such cruelty also. Carpenter v. Carpenter, 30 Kan. 712, 743; Sylvis v. Sylvis, 11 Col. 319, 328; 9 Am. & Eng. Encyc. L. (2d Ed.) 794, et seq.
It is perhaps hardly necessary to say that, to justify a decree upon this ground, the proof of the existence and the cause of such suffering must be plain, and its serious effect upon present health as well as its menace of real danger to life must be shown with an unusual degree of certainty.
For the reasons given the decree will be affirmed; but the costs in this, court will be taxed against the appellee. It is so ordered. Affirmed.